# AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Darren Earle, being duly sworn, depose and say:

1. I am a Special Agent of the United States Secret Service and have been so employed for the past fourteen years. I am currently assigned to the Chattanooga Resident Office and have participated in numerous investigations that fall under the investigative jurisdiction of the United States Secret Service, including, but not limited to, violations involving access device fraud.

2. I make this affidavit in support of a warrant to search Blackberry Curve cellular telephone, Mobile Equipment Identifier #268435459709848868 seized from Adrian Gonzalez Barretto in the parking lot of WalMart, 2675 Decherd Boulevard, Winchester, Tennessee, in the Eastern District of Tennessee on July 19, 2011, and which is presently secured at the United States Secret Service, Chattanooga Resident Office, Chattanooga, Tennessee for stored telephone numbers, recorded numbers of incoming, outgoing, or missed calls, or logged as return call phone numbers, and/or stored text messages and information, records, or data pertaining to the usage and trafficking of counterfeit access devices.

3. On July 19, 2011, the above-described Blackberry Curve cellular telephone was seized incident to the arrest of Adrian Gonzalez Barretto at WalMart, 2675 Decherd Boulevard, Winchester, Tennessee by the Winchester Police Department for violating T.C.A. 39-14-115 (Criminal Simulation).

4. On July 19, 2011, the Winchester Police Department was notified by WalMart security that a male subject had just successfully purchased WalMart gift cards in Tullahoma, Tennessee with what were suspected to be counterfeit credit cards. WalMart security further advised that they had followed the subject from WalMart in Tullahoma, Tennessee to WalMart in Winchester, Tennessee and the male subject was making additional gift card purchases at WalMart in Winchester, Tennessee.

5. On July 19, 2011, Winchester Police Officer Jeff Miller responded to WalMart, 2675, Decherd Boulevard, Winchester, Tennessee and detained Adrian Gonzalez Barretto in the parking lot. At this time it was explained to Officer Miller and other Winchester police officers that on July 7, 2011 an individual matching Barretto's description had made several WalMart gift card purchases from the WalMart in Tullahoma, Tennessee. Winchester WalMart employees stated at this time that Barretto had just purchased WalMart Gift cards with a "black credit card."

6. While being detained at the WalMart in Winchester, Tennessee, Barretto provided Decherd Police Department Chief Ross Peterson with the contents of pockets which consisted of a brown wallet containing cash, a WalMart Visa debit card, a red Bank of

America Visa card, a silver Bank of America Visa card, three WalMart gift cards and two Boost Mobile cards.

7. While being detained Barretto indicated to Decherd Police Chief Ross Peterson in Spanish that he was driving the red F-150 pickup truck parked a short distance away in the Winchester WalMart parking lot.

8. At this time, Tullahoma Police Department Investigator Ty Brazier was contacted. Investigator Brazier advised that he had information pertaining to the counterfeit credit card transactions that occurred on July 7, 2011 at the Tullahoma WalMart. Investigator Brazier advised that he would meet Winchester Police Department Investigator Ronnie Durm at the Winchester Police Department and attempt to determine if Barretto was the same individual who purchased WalMart gift cards at the Tullahoma WalMart on July 7, 2011.

9. Continuing on July 19, 2011, Winchester Police Department Investigator Kelly Gass drove Barretto's Ford F-150 to the Winchester Police Department while Barretto was transported to the Winchester Police Department by Officer Miller.

10. After removing Barretto from the vehicle, Officer Miller searched the back seat of his patrol car and found four WalMart receipts stuffed under the back seat of his patrol car. Further search of Officer Miller's patrol car revealed that three credit cards in the name Adrian Gonzalez were secreted behind the passenger side rear deck panel of Officer Miller's patrol car and one credit card in the name Adrian Gonzalez in the driver's side rear deck panel.

11. On July 19, 2011, after being notified of the above information I responded to the Winchester Police Department. Utilizing a Xico model 5607 card verifier I determined that the two Bank of America cards found in Barretto's wallet contained Track 1 and Track 2 data that matched the information on the front of the cards, indicating that the two cards were valid.

12. Utilizing the same Xico model 5607 card verifier I determined that the four credit cards found secreted in Officer Miller's patrol car and bearing the name Adrian Gonzalez contained no valid Track 1 information. It should be noted that Track 1 information usually consists of the name on the front of the card and the account number. The four cards found secreted in Officer Miller's patrol car did contain Track 2 data. Track 2 data does not contain the card holder's name, only the account information utilized to conduct a credit card transaction. The absence of Track 1 data is indicative that the cards found secreted in Officer Miller's Patrol car are counterfeit.

13. On July 19, 2011, Investigator Durm contacted Century Bank, the issuing bank for MasterCard account #5441 6180 0023 5155. One of the four credit cards secreted in the

2

back of Officer Miller's patrol car bore this number on the face of the card and on the Track 2 magnetic data. A representative of Century Bank advised that the account number associated with this card had been closed recently but could provide no further information. Investigator Durm also contacted USAA Bank, the issuing bank for MasterCard account #5523 1303 0913 6002 another of the credit cards found secreted in the back of Officer Miller's patrol car. Investigator Durm determined through USAA that Adrian Gonzalez was not authorized to use MasterCard account #5523 1303 0913 6002. Investigator Durm further stated that another of the credit cards found secreted in Officer Miller's vehicle, #4427 9399 0269 5762 was non-existent according to a representative of the issuing bank, RBS Citizens, National Association.

14. On July 19, 2011, I compared the receipts found stuffed under the back seat of Officer Miller's patrol car to the credit cards found secreted behind the rear deck panel of Officer Miller's patrol car and observed that the WalMart receipt dated 7/19/11, 11:36:16 indicates that WalMart gift card #087458601609 was purchased for the amount of $200 utilizing an account ending in 5155. The WalMart receipt dated 7/19/11, 11:42:37 indicates that two Boost Mobile phone cards were purchased in the amount of $110.05 utilizing an account ending in 5155. The WalMart receipt dated 7/19/11 11:43:02 indicates that WalMart gift card #087458600850 was purchased for the amount of $100 utilizing an account ending in 5155. The WalMart receipt dated 07/19/11, 11:35:07 indicates that WalMart gift card #087458601799 was purchased in the amount of $200 utilizing an account ending in 6002. MasterCard #5441 6180 0023 5155 and 5523 1303 0913 6002 were two of the credit cards found secreted in Officer Miller's patrol car after transporting Gonzalez to the Winchester Police Department. As stated previously, two Boost Mobile gift cards were found on Gonzalez's person when detained at WalMart. WalMart gift cards #087458601609, 087458601799, and 087458600850 were also found on Gonzalez's person at the time he was detained at the WalMart in Winchester, Tennessee.

15. On July 19, 2011, Tullahoma Police Department Investigator Brazier arrived at the Winchester Police Department. Using still photos obtained from the WalMart in Tullahoma, Tennessee, Investigator Brazier determined that Gonzales matched the video images of the individual who conducted thirteen counterfeit credit card transactions on July 7, 2011 at the WalMart in Tullahoma, Tennessee. Investigator Brazier further stated that the red F150 truck driven by Gonzalez matched the video images of the vehicle driven on July 7, 2011 by the individual who conducted the thirteen counterfeit credit card transactions.

16. On July 19, 2011, I attempted to question Gonzalez in reference to his transactions at the WalMarts in Tullahoma, Tennessee and Winchester, Tennessee. After being advised of his constitutional rights, Gonzalez advised that he wished to speak with an attorney.

17. On July 19, 2011, Investigator Durm arrested Adrian Gonzalez Barretto for violating TCA 39-14-115 (Criminal Simulation).

18. Based on my training and experience I know that individuals engaged in counterfeit credit cards often use cellular telephones and email communications to transmit account information, target locations, co-conspirator information, and instructions to co-conspirators. Cellular telephones are able to store thousands of account numbers on removable memory cards thus eliminating the need for perpetrators to possess paper documentation of stolen/compromised account numbers.

19. Based on my training and experience, I know that email communications of individuals engaged in counterfeit credit card activities often mention previous and future target locations. These email communications can be provide evidence of victims of credit card fraud.

20. Based on my knowledge, training, and experience, I believes that there is probable cause to believe evidence of violations of Title 18, United States Code, Section 1029 will be found in the contents of the cellular telephone. I hereby request authorization to search and seize the following evidence:

    (a) All data records relating to violations of 18 USC 1029, including lists of telephone numbers and related identifying information; types, amounts, and prices of counterfeit access devices trafficked as well as dates, places, and amounts of specific transactions; and information related to sources of counterfeit access devices (including names, addresses, phone numbers, or any other identifying information); any information relating to Barretto's receipt, possession, transfer or transportation of counterfeit access devices, and any information recording Barretto's schedule or travel.

    (b) The terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any electrical, or electronic form, such as any information stored on an electronic device, including the subject cellular telephone.

21. Technical Requirements. Searching cellular telephones for criminal evidence can be a highly technical process requiring expert skill and a properly controlled environment. This is due to efforts by subjects to lock the devices in order to prevent others from accessing the information store within. The vast array of computer technology requires even computer experts to specialize in some systems and applications, so it is difficult to know before a search which expert is qualified to "unlock" and analyze the specific system and the data stored within. In any event, however, data search protocols are designed to protect the integrity of the evidence and to recover even "hidden," erased,

4

compressed, password-protected, or encrypted files. In light of these difficulties, your Affiant requests permission to use whatever data analysis techniques appear necessary to locate and retrieve the evidence described above.

22. Based upon the foregoing your affiant believes there is probable cause to believe that Blackberry Curve cellular telephone, Mobile Equipment Identifier 268435459709848868 seized from Adrian Gonzalez Barretto in the parking lot of WalMart, 2675 Decherd Boulevard, Winchester, Tennessee, and currently secured at the United States Secret Service, Chattanooga Resident Office, Chattanooga, Tennessee contains data, records, or information pertaining to offenses in violation of Title 18, United States Code, Section 1029 (Access Device Fraud).

FURTHER AFFIANT SAYETH NOT.

_____
G. Darren Earle, Special Agent
United States Secret Service

Sworn to and subscribed before me this 21 day of July, 2011.

_____
WILLIAM B. MITCHELL CARTER
UNITED STATES MAGISTRATE JUDGE